UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-624-MOC-SCR

| WILLIE "WILL" SHAW, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| TOWN OF MINT HILL, et al., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendants John D. White and Amanda B. Nosalek's motion to dismiss Plaintiff's claims against them. (Doc. No. 16). Plaintiff opposes the motion (Doc. No. 19). Defendants declined to reply to Plaintiff's response. (Doc. No. 21). This matter is now ripe for disposition.

**I.    BACKGROUND**

This case is about the state and local law enforcement officers who investigated Plaintiff in connection with the death of an elderly woman. As a result of Defendant officers' investigation, Plaintiff was arrested, indicted, and entered an Alford plea to the North Carolina crime of Felony Patient Abuse. Plaintiff spent more than five years incarcerated before his eventual exoneration.

This motion to dismiss concerns Plaintiff's allegations against state law enforcement officers. Defendants John D. White and Amanda Nosalek, then agents with the North Carolina State Bureau of Investigation ("SBI"), assisted local law enforcement's investigation of Plaintiff.

1

Plaintiff sues White and Nosalek (hereinafter "SBI Defendants") in their individual capacities under 42 U.S.C. § 1983, alleging the SBI officers violated his Fourteenth Amendment rights by (1) fabricating evidence; (2) initiating criminal proceedings without probable cause; and (3) failing to investigate in good faith. Plaintiff further raises North Carolina state law claims of malicious prosecution and gross negligence against both SBI Defendants.

The following recitation of the facts focuses on the conduct of the SBI Defendants and Plaintiff's related claims.

### A. Factual Background

In May of 2015, Plaintiff was a Certified Nursing Assistant ("CNA") at the Lawyers Glen Retirement Living Center ("Lawyers Glen") in Mint Hill, North Carolina. Plaintiff's duties included assisting residents with bathing and personal hygiene. Doris Starnes ("Starnes"), an 86-year-old woman suffering from dementia among other ailments, was one such resident. Starnes was incontinent and wheelchair dependent. She also took prescription blood thinner.

Shortly after 10:00 p.m. on the evening of May 14, 2015, Plaintiff entered Starnes' room to find her in a state of distress. Her bedsheets were soiled with blood, feces, and coffee-ground emesis. Plaintiff sought help from other staff, who called EMS.

First responders transported Starnes to Novant Health Matthews Medical Center ("Novant"), where an ER physician discovered a brisk, profound vaginal bleed. Physicians took Starnes off a blood thinner and ordered a transfusion. Vaginal examination using a speculum revealed two sources of bleeding: one 1.5cm laceration on Starnes' perineum, and another 4.5cm curved laceration in her vagina. Both lacerations were sutured, and photographs taken. Starnes succumbed to complications from aspiration pneumonia on May 17, 2015.

A Novant Ob-Gyn physician noted Starnes' vaginal laceration as unusual. She

2

consequently ordered a rape kit exam and notified the Mint Hill Police Department ("MHPD") on May 15. Upon receiving that notification, MHPD employees contacted Defendant White to request SBI assistance with their investigation.

On May 18, 2015, investigators summoned Plaintiff to MHPD for questioning. Defendant White falsely represented to Plaintiff that polygraph results were admissible at trial, and that Starnes' son was a Mecklenburg County judge. Plaintiff provided oral DNA swabs and agreed to return for a polygraph test. During his questioning, Plaintiff informed Defendant White of Starnes' habit of "diaper digging," a behavior common among dementia patients that can cause self-injury.

After interviewing Plaintiff, Defendant Wedra spoke with Assistant Medical Director Dr. Dawn Lajoie, who informed Wedra that Starnes had not suffered injuries consistent with a sexual assault. On May 20, another Lawyers Glen CNA informed MHPD investigators that other staff were aware of and concerned by Starnes "digging" habit. The next day, Starnes' primary care provider, Dr. James Benson, confirmed that habit to MHPD Defendant Wedra. Additional Lawyers Glen personnel, as well as nursing records, confirmed that Starnes was a "digger" and that staff sometimes had to clean feces from her hands and person.

Defendants' investigation further revealed that (1) Plaintiff gave Starnes a shower at 2:50 p.m. the day she was admitted to Novant; (2) a medication technician administered medication to Starnes at 4:20 p.m. and 7:50 p.m. that same day and observed that Starnes appeared unremarkable; and (3) Plaintiff put on gloves before bathing Starnes to reduce the risk of injuring her with a fingernail.

On May 26, Trevinia Graham, a Lawyers Glen housekeeper, made allegations against Plaintiff to investigators. Specifically, Graham recounted that on the day of the incident (1) she

3

spoke with Starnes at the doorway to her room; (2) at that time, Starnes had feces on her hands; (3) Graham subsequently retrieved Plaintiff from another resident's room; and (4) Graham then observed Plaintiff place Starnes in a shower. Graham was certain that this episode occurred at 7:00 p.m. on May 14, 2015. Graham also made allegations against another CNA, Santiago.

Lawyers Glen surveillance video disproved Graham's account. To the contrary, the footage showed that (1) Graham was not present on Starnes' wing after 6:00pm; (2) Starnes was put to bed around 6:00 p.m.; and (3) Graham did not interact with either Plaintiff or Starnes near Starnes' room at 7:00 p.m..[1]

Following Graham's allegations, investigators (including Defendant White) decided to summon Plaintiff and Santiago for further interrogation and polygraph examination. Defendant Nosalek, a licensed SBI polygraph examiner, was charged with administering the polygraph. Defendants White and Nosalek were familiar with MHPD Defendants Wedra and Moberg, who (along with Defendant White) decided to bring Plaintiff in for a polygraph.

Plaintiff contends that Defendants White, Wedra, and Moberg "enlisted" Defendant Nosalek to ensure that the polygraph results would exonerate Santiago and incriminate Plaintiff. Pursuant to that "agreement," Defendant Nosalek chose to polygraph both suspects herself, though standard forensic practice would require separate examiners. On May 28, Nosalek polygraphed Santiago under Defendant Wedra's observation. After clearing Santiago, Nosalek unsuccessfully attempted to elicit incriminating statements regarding Plaintiff. Instead, Santiago further confirmed Starnes' "digging" habit, and told investigators that Starnes had long nails and

---

[1] Plaintiff avers that Defendant Wedra subsequently convinced Graham to change her story. Plaintiff further avers that Defendants ignored concerns regarding Graham's credibility and potential motive to lodge false allegations against Lawyers Glen, and evidence contradicting Graham's account offered by Lawyers Glen Senior Director of Operations & Clinical Services Sandra Korzeniewski.

4

fragile skin that would bleed when she scratched herself.

The next day, Defendants summoned Plaintiff for a polygraph exam and additional questioning. Plaintiff contends that this meeting was part of a scheme, agreed upon by Defendants, to coerce an incriminating statement or admission from Plaintiff. Defendants Wedra, Moberg, and White observed Nosalek's three-and-a-half-hour polygraph exam.

Minutes after the exam concluded, Nosalek purported to score the exam and told Plaintiff that he failed. Defendant Nosalek failed to preserve the digital charts and data from her polygraph exam. Plaintiff contends that Nosalek did not polygraph him at all, but instead subjected him to "an improper custodial interrogation disguised as a polygraph and fabricated evidence to wrongfully charge [Plaintiff] with a crime." (Doc. No. 1 ¶ 152). Defendant Nosalek, using her fabricated polygraph evidence, then attempted to elicit incriminating statements from Plaintiff. Specifically, Plaintiff alleges that Defendant Nosalek told Plaintiff:

- "You are either a sexual predator or you made a mistake";
- "In the course of cleaning her up, you caused these injuries";
- "I do believe you caused the injuries";
- "The only way you can fail a polygraph is if you know what you did";
- "You cannot tell me positively that you did not do it";
- "My expert opinion is that you cannot fail a polygraph because you are not sure."

(Id. ¶ 153).

After Defendant Nosalek concluded her interrogation, Defendant Wedra picked up where Defendant Nosalek left off. Like Defendant Nosalek, Defendant Wedra attempted to use the polygraph results to elicit Plaintiff's inculpating acknowledgement that he could have inserted a finger or washcloth into Starnes' vagina while helping her shower. Plaintiff contends that

5

Defendant Wedra adopted this strategy "[i]n accordance with Defendants' plan" to incriminate Plaintiff, (Id. at 34 n.8), and supports this contention with excerpts from Defendant Wedra's questioning including the following:

> I believe based on the polygraph and the Special Agent's [i.e., Nosalek's] expertise in it … I believe you knew your fingers went up in there when you took the test … I believe you knew that. At what point did you realize … you know when I went up in there, I went up a little bit too rough?

(Id. at 34). Plaintiff eventually acknowledged he could have inadvertently injured Starnes:

> If I did cause the injuries, I did not mean to. Because I was pretty much just doing my job. I was giving her a shower. I just know that I went in [the shower] and did my job. I didn't mean the lady any harm if I did so called [sic] harm her. But I don't think I harmed her. I just gave her a shower.

(Id. ¶ 156).

Defendants Wedra, Moberg, and (as relevant here) White conferred, and deemed Plaintiff's statement an "oral admission" of guilt. Specifically, in a June 2, 2015, email Defendant White noted that "[o]n Friday, May 29, 2015, Shaw acknowledged assaulting Starnes following a polygraph test." (Id. at 35 n.1). Defendant Wedra likewise wrote that "[Plaintiff] made an oral admission that he either placed a washcloth or a finger into the vagina of Doris Starnes while giving her a shower on 05/14/2015." (Id. ¶ 158). Defendants then decided to arrest Plaintiff and initiate criminal proceedings.

Defendant Wedra arrested Plaintiff on May 29, 2015. Plaintiff maintains that his arrest was unsupported by probable cause. Based on Defendant Wedra's allegation that Plaintiff "did forcibly penetrate the vagina of Doris Starnes, an elderly patient in his care, with his fingers and a rag," Magistrate Judge M.L. Robinson charged Plaintiff with felony first-degree sexual offense. Unable to post bond, Plaintiff was detained for thirteen months pending trial in the Mecklenburg County Detention Center. On June 2, 2015, the Charlotte-Mecklenburg Police Department

6

Case 3:23-cv-00624-MOC-SCR    Document 22    Filed 05/14/24    Page 6 of 19

("CMPD") crime laboratory notified Defendant Wedra that no semen was detected in Starnes' sexual assault evidence kit or her bedsheets.

On June 15, 2015, a grand jury indicted Plaintiff for first-degree sexual offense in violation of N.C. GEN. STAT. § 14-27(a). The indictment alleged that Plaintiff "did unlawfully, willfully, and feloniously with force and arms engage in a sexual act with Doris Starnes by force and against that victim's will, inflicting serious injury." Detective Keith A. Mickovic was the only witness who appeared before the grand jury. Plaintiff argues that Det. Mickovic presented to the Grand Jury false and misleading information compiled for him by Defendants Wedra, Moberg, White, and Nosalek.

On February 1, 2016, a grand jury indicted Plaintiff for felony patient abuse in violation of N.C. GEN. STAT. § 14-32.2(b)(1). The indictment alleged that Plaintiff "did unlawfully, willfully, and feloniously physically abuse Doris Starnes, a resident at a residential care facility and the abuse was intentional and proximately caused the death of Doris Starnes." Defendant Wedra was the only witness who appeared before the grand jury. Plaintiff contends that Defendant Wedra's grand jury testimony included false and misleading information and failed to disclose material exculpatory facts.

On June 2, 2016, the Assistant District Attorney offered Plaintiff a deal: plead guilty to felony patient abuse and neglect or the state would indict for first-degree (felony) murder. Lacking confidence in his public defender, Plaintiff entered an Alford plea to felony patient abuse on June 30, 2016, and received a sentence of 104 to 137 months in prison. In exchange for Plaintiff's guilty plea, the state dismissed the first-degree sexual offense charge.

B. Procedural Background

On July 24, 2019, Plaintiff filed a motion, through attorneys at the Duke Wrongful

Convictions Clinic, asserting that his Alford plea was invalid because it lacked a sufficient factual basis. The Court held an evidentiary hearing on Plaintiff's motion, and after three days of testimony the state requested a continuance so that prosecutors could review and reconsider evidence of Plaintiff's innocence. On January 19, 2021, Plaintiff filed a joint motion with the state for appropriate relief by agreement. The Honorable Carla N. Archie, Superior Court Judge, vacated Plaintiff's conviction and ordered his immediate release from prison.

In October 2023, Plaintiff sued the Town of Mint Hill and Defendants Wedra, Moberg, White, and Nosalek in this Court, alleging violations of his Fourth and Fourteenth Amendment rights and several tort claims. Whereas Defendants Mint Hill, Wedra, and Moberg answered Plaintiff's complaint in December of 2023, Defendants White and Nosalek (the SBI Defendants) filed a motion to dismiss in February 2024. Plaintiff responded in opposition, and SBI Defendants declined to reply.

## II. STANDARD OF REVIEW

Defendants move to dismiss under FED. R. CIV. P. 12(b)(1), (2), and (6). Assessing these Defendant's motion, the Court "must draw all reasonable inferences arising from the [plaintiff's] proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993). Plaintiff aptly notes that "[a]lthough the SBI Defendants' Motion also cites Rules 12(b)(1) and 12(b)(2), Defendants did not make any arguments challenging subject matter jurisdiction or personal jurisdiction." (Doc. No. 19 at 10 n.4).

A Rule 12(b)(1) motion requires the party asserting federal subject matter jurisdiction to prove such jurisdiction is proper. In other words, a Rule 12(b)(1) motion questions whether the plaintiff "has a right to be in the district at all and whether the court has the power to hear and dispose of [plaintiff's] claim." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448,

452 (4th Cir. 2012). Ruling on a motion to dismiss for lack of standing, the Court "must construe the complaint in the plaintiff's favor, accepting as true the factual allegations in the complaint." Students for Fair Admissions, Inc. v. Univ. of N.C., 1:14CV954, 2018 WL 4688388, at *2 (M.D.N.C. Sept. 29, 2018). A district court should only grant a Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg, & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). To determine whether subject matter jurisdiction is proper, the Court may consider evidence beyond the pleadings. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

A Rule 12(b)(2) motion requires the plaintiff to show that the Court may properly exercise personal jurisdiction over the defendant(s). In response to a Rule 12(b)(1) motion, the plaintiff bears the burden to allege specific facts showing that personal jurisdiction is proper. Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1988); Weller v. Cromwell Oil Co., 504 F.2d 927, 930 (6th Cir. 1974).

A Rule 12(b)(6) motion tests whether the plaintiff "has stated a cognizable claim" and thereby challenges the "sufficiency of the complaint." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012). In reviewing a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

## III. DISCUSSION

### A. Fabrication of Evidence

The Fourteenth Amendment's due process clause confers upon citizens a "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity." Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005). A plaintiff claiming violation of that right must prove that (1) defendant officers fabricated evidence and (2) such fabrication resulted in deprivation of the plaintiff's liberty. Id.; see Gilliam v. Sealey, 932 F.3d 216, 241 (4th Cir. 2019). Here, Plaintiff contends that Defendant Nosalek fabricated Plaintiff's polygraph results, and Defendant White approved Defendant Wedra's decision to fabricate evidence by filing a false investigation report. Defendants respond that Plaintiff's allegations are insufficient under Rule 12(b)(6).

To prevail on his evidence fabrication claim against Defendant Nosalek, Plaintiff must show that Nosalek "deliberately or with a reckless disregard for the truth made material false statements … or omitted … material facts with the intent to make, or with reckless disregard to make it misleading." Miller v. Prince George George's Cnty., Md., 475 F.3d 621, 627 (4th Cir. 2007). Defendant Nosalek argues that Plaintiff fails to plead facts supporting the inference that Defendant Nosalek's evidenced "the requisite intent to mislead." United States v. Colkly, 899

10

F.2d 297, 299–301 (4th Cir. 1990).

True, a complaint's "bare assertion that [certain] statements were made with the requisite intent" is insufficient to survive a motion to dismiss. Painter's Mill Grille, LLC v. Brown, 715 F.3d 342, 354 (4th Cir. 2013); Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012). But that description hardly befits Plaintiff's complaint here. While Plaintiff admits that "[d]iscovery is needed to determine whether Defendant Nosalek intentionally or recklessly fabricated the polygraph evidence," (Doc. No. 19 at 19–20), Plaintiff plausibly alleges that Nosalek "willingly participated in a scheme to use sham polygraphs of Santiago and [Plaintiff] to exonerate the former and elicit some statement that could be characterized as inculpatory" against the latter, all in violation of standard forensic practices. (Doc. No. 19 at 20) (citing Doc. No. 1 ¶¶ 131, 132, 143, 146, 148–52). That is more than enough to establish, at the deferential motion to dismiss standard, Defendant Nosalek's intent to mislead.

Plaintiff raises another evidence fabrication claim against Defendant White under a theory of bystander liability, alleging that White tacitly approved Defendant Wedra's decision to falsely report Plaintiffs "oral admission" arising from the May 29, 2015, interrogation. (Doc. No. 1 ¶ 230). In the Fourth Circuit, bystander liability attaches where an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002). Here, Plaintiff contends that Defendant White (1) watched Defendant Wedra interrogate Plaintiff; (2) knew that Plaintiff had not made an admission of guilt during that interrogation; (3) was therefore aware that Defendant Wedra's false report would violate Plaintiff's constitutional rights; but (4) chose not to act to prevent Wedra's unlawful conduct. (Doc. No. 1 ¶¶ 145, 158, 230). SBI Defendants dispute that Defendant White approved of

11

Wedra's false report. But even if the Court could discredit Plaintiff's well-plead factual allegations (which it cannot at the motion to dismiss stage), Defendant White's purported lack of approval is immaterial—the Fourth Circuit bystander liability test does not consider whether an officer aware of a constitutional violation "approved" the violation, but whether, given that awareness, they "[chose] not to act." Randall, 302 F.3d at 204.

The Court will thus deny SBI Defendants' motion to dismiss Plaintiff's fabrication of evidence claims.

### B. Initiation of Criminal Proceedings without Probable Cause

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." Brooks v. City of Winston–Salem, 85 F.3d 178, 183 (4th Cir. 1996). To state an unreasonable seizure claim for lack of probable cause, Plaintiff must show that SBI Defendants (1) caused (2) Plaintiff's seizure pursuant to legal process but unsupported by probable cause, and (3) that the resulting criminal proceedings terminated in Plaintiff's favor. See Evans, 166 F.3d at 647 (citing Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012)). SBI Defendants attack the second prong of Plaintiff's unreasonable seizure claim, contending they had probable cause to initiate criminal proceedings and therefore did not abrogate Plaintiff's Fourth Amendment freedoms. (Doc. No. 16 at 9). Thus, Defendants contend, Plaintiff's Fourth Amendment claim should be dismissed.

Probable cause is not a technical concept or term of art, but instead "deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996). The existence of probable cause "is determined from the totality of the circumstances known to the officer." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). Probable cause does not require that the

12

officer's belief be more likely true than false. United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004). Whether probable cause exists given a particular set of facts is an objective question of law for the court. Devenpeck v. Alford, 543 U.S. 146, 153 (2004); Park v. Shiflett, 250 F.3d 843, 849–50 (4th Cir. 2001).

Defendants' motion to dismiss Plaintiff's Fourth Amendment claim relies heavily on the Fourth Circuit's conclusion in Durham that "an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." 690 F.3d at 188. But the question is not as simple as Defendants' selective quotation suggests. In fact, the Durham Court recognized on the very next page of its decision that a grand jury indictment does not "shield a police officer who deliberately supplied misleading information" that influenced the grand jury's decision. Id. at 189; see also Gilliam, 932 F.3d at 240–41; Massey v. Ojaniit, 759 F.3d 343, 357 (4th Cir. 2014); Miller, 475 F.3d at 632. Put simply, where probable cause was supported by false statements attributable to law enforcement officers, a Fourth Amendment claim will lie. Manuel v. City of Joliet, Ill., 580 U.S. 357, 359–60, 367–69 (2017).

Here, Plaintiff alleges that Defendants not only fabricated the evidence of probable cause justifying Plaintiff's arrest and indictment, but also concealed material exculpatory evidence that would have (perhaps fatally) undermined Defendants' finding of probable cause determination. Withholding exculpatory information from a prosecutor—as the SBI Defendants arguably did here—exposes officers to liability for Section 1983 and common law claims. Goodwin v. Metts, 885 F.2d 157, 162 (4th Cir. 1989). Further, Plaintiff contends that Defendants' probable cause determination improperly relied on Graham's untrustworthy allegations, which were clearly unreliable given the totality of circumstances under which they emerged. See (Doc. No. 19 at 13) (citing Clipper v. Takoma Park, 876 F.2d 17, 19 (4th Cir. 1989)). Under the deferential motion to

13

dismiss standard, Plaintiff has done enough to show that that grand jury indictments in this case should not be taken as conclusive evidence of probable cause. Moreover, Plaintiff's complaint alleges sufficient facts that, if true, could lead a reasonable factfinder to conclude that the SBI Defendants violated Plaintiff's Fourth Amendment freedom from unreasonable seizure by instituting criminal proceedings without probable cause.[2]

### C. Bad Faith Failure to Investigate (Defendant White Only)

SBI Defendants apparently misinterpret Plaintiff's failure to investigate claim against Defendant White as a supervisory liability claim, which Defendants contend must be dismissed because Defendant White was not Defendant Wedra's supervisor when Wedra allegedly submitted her false report. (Doc. No. 17 at 21). In fact, Plaintiff raises a bad faith failure to investigate claim against Defendants White, Moberg, and Wedra individually at ¶¶ 254–63 of the Complaint. A Fourteenth Amendment due process claim for bad faith failure to investigate will lie "if an officer takes bad faith actions to shield his wrongful acts, including fabricating testimony and failing to disclose exculpatory evidence." Howard v. City of Durham, 487 F. Supp. 3d 377, 426 (M.D.N.C. 2020) (citing Gilliam, 932 F.3d at 240–41); see also Livers v. Schenck, 700 F.3d 340, 351 (8th Cir. 2012). Here, Plaintiff plausibly alleges that Defendants White, Moberg, and Wedra refused to adequately investigate the reliability of Trevinia Graham's account and declined to disclose exculpatory evidence, all in service of their bad faith effort to shield wrongful acts related to Plaintiff's fabricated confession. See Gilliam, 932 F.3d at 241. Defendant White's motion to dismiss Plaintiff's failure to investigate claim must be denied.

---

[2] Specifically, Plaintiff alleges that Defendants agreed to (1) charge Plaintiff using a fabricated "confession" obtained by SBI Defendant Nosalek's feigned polygraph; (2) present false and misleading to the grand jury; (3) refuse to disclose potentially exculpatory information; and (4) rely on Trevinia Graham's objectively unreliable allegations. See (Doc. No. 19 at 15–17).

14

### D. Civil Conspiracy to Violate Plaintiff's Fourteenth Amendment Rights

Section 1983 provides a private right of action against state officials who conspired to violate a plaintiff's constitutional rights. Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996). To state a civil conspiracy claim under Section 1983, Plaintiff must show that Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy" depriving Plaintiff of a constitutional right. Id. (citing Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992)); see North Carolina ex rel. Cooper v. Ridgeway Brands Mfg., 362 N.C. 431, 441 (2008). Defendants contend that Plaintiff's conspiracy allegations "amount to nothing more than mere speculation and conjecture." (Doc. No. 17 at 18). Taking the facts and inferences in the light most favorable to Plaintiff's conspiracy claim, the Court cannot agree.

Plaintiff need not show that Defendants entered an explicit, overt agreement to violate his constitutional rights. Hafner, 983 F.2d at 577–78. Indeed, mere acquiescence "can amount to a conspiracy agreement" where a law enforcement officer "watches an open breach of the law and does nothing to seek its prevention." Id. at 578. Plaintiff may rely on circumstantial evidence to show the existence of a conspiracy agreement. See Henderson v. LeBauer, 399 S.E.2d 142, 145 (N.C. Ct. App. 1991); Taylor v. Deaver, No. 5:11-cv-341, 2012 WL 12905868, at *5 (E.D.N.C. Sept. 28, 2012). Here, Plaintiff plausibly alleges that the SBI Defendants agreed and conspired "to use fabricated evidence to prosecute Plaintiff without probable cause." (Doc. No. 19 at 17) (quoting Doc. No. 1 ¶¶ 250, 271). More specifically, Plaintiff contends that Defendants Wedra, Moberg, White, and Nosalek agreed that Nosalek would manipulate the results of her polygraph examination to exonerate Santiago, incriminate Plaintiff, and subsequently institute criminal charges. (Doc. No. 19 at 23) (citing Doc. No. 1 ¶¶ 128–29, 131, 138, 141–43).

Considering Plaintiff's allegations under the highly deferential motion to dismiss

15

standard, Plaintiff has plausibly alleged the existence of a conspiracy agreement, to which SBI Defendants at the very least acquiesced, to violate Plaintiff's constitutional rights. SBI Defendants' motion to dismiss Plaintiff's civil conspiracy claim must therefore be denied.

### E. Malicious Prosecution

The Fourth Amendment's protection from unreasonable seizures, as incorporated against the states by the Fourteenth Amendment, does not create a private right of action to redress malicious prosecution. In the Fourth Circuit, however, a malicious prosecution claim can be brought under 42 U.S.C. § 1983 so long as that claim (1) "meets the common law standards for malicious prosecution" and (2) "alleges violations of a plaintiff's Fourth Amendment constitutional rights." Brooks, 85 F.3d at 184. Thus, "[w]hat is conventionally referred to as a '1983 malicious prosecution' action is nothing more than a 1983 claim arising from a Fourth Amendment violation." Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000). To state a North Carolina malicious prosecution claim, Plaintiff must show that the SBI Defendants "(1) instituted, procured or participated in the criminal proceeding against [Plaintiff]; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of [Plaintiff]." Lopp v. Anderson, 795 S.E.2d 770, 779 (N.C. 2016) (citing Moore v. Evans, 476 S.E.2d 415 (N.C. App. 1996)). These are the same elements Plaintiff must establish for his Fourth Amendment (probable cause) claim, with the addition that Plaintiff must also prove that Defendants acted "with malice." But under North Carolina law, "malice can be inferred from the want of probable cause alone." Id. Because the Court has already found plausible Plaintiff's allegations that Defendants instituted criminal proceedings against Plaintiff without probable cause, and because those proceedings terminated in Plaintiff's favor, the Court must deny Defendants' motion to dismiss Plaintiff's malicious prosecution claim.

### F. Gross Negligence

Plaintiff purports to bring a gross negligence claim against SBI Defendants in this Court while simultaneously pursuing a damages claim before the North Carolina Industrial Commission. (Doc. No. 1 ¶ 75). Under the Tort Claims Act, the Industrial Commission is the exclusive jurisdiction for negligence claims against North Carolina officials acting in their <u>official</u> capacity. N.C. GEN. STAT. § 143-291; <u>Estate of Long v. Fowler</u>, 841 S.E.2d 290, 295–96 (N.C. Ct. App. 2020). North Carolina retains sovereign immunity against official capacity claims brought before all courts besides the Industrial Commission. <u>Id.</u> Thus, Plaintiff cannot bring an official capacity negligence claim against SBI Defendants before this Court.

Plaintiff may, however, bring before this Court a negligence claim against SBI Defendants in their <u>individual</u> capacities. While North Carolina law endows public officers with absolute immunity for their discretionary acts, that immunity does not withstand "a showing of malice or corruption." <u>Young v. Woodall</u>, 458 S.E.2d 225, 228 (N.C. Ct. App. 1995), <u>rev'd on other grounds</u>, 471 S.E.2d 357 (1996). Put another way, to prevail on an individual capacity negligence claim, Plaintiff must show that Defendants' conduct was "corrupt or malicious," or that Defendants "acted outside of and beyond the scope" of their duties. <u>Hobbs v. N.C. Dep't Human Res.</u>, 520 S.E.2d 595, 602–03 (N.C. Ct. App. 1999).

Plaintiff plausibly pleads several exceptions to public official immunity, requiring the Court to deny SBI Defendants' motion to dismiss Plaintiff's individual capacity negligence claims. Even if the Court had not already blessed the allegations supporting the malice element of Plaintiff's malicious prosecution claim, Plaintiff further alleges that SBI Defendants acted corruptly and beyond the scope of their authority. (Doc. No. 1 ¶¶ 66, 74). What's more, public official immunity is unavailable to those who violate clearly established constitutional rights,

such that North Carolina public official immunity is essentially coterminous with federal qualified immunity. Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003). Because the Court finds infra that SBI Defendants are not entitled to qualified immunity at the motion to dismiss stage, the Court concludes that their public official immunity claim must likewise fail.

Defendants submit that Plaintiff's individual capacity negligence claims are barred by qualified immunity. (Doc. No. 17 at 23) (citing Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006)). To overcome this affirmative defense, Plaintiff must show that (1) the allegations underlying their claim "substantiate the violation of a federal statutory or constitutional right" and (2) that the right violated was "clearly established." Id. (quoting Mellen v. Bunting, 327 F.3d 355, 365 (4th Cir. 2003)); see Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pearson v. Callahan, 555 U.S. 227, 233 (2009). If Plaintiff cannot satisfy this two-part test, then Defendants are immune from suit. Cloaninger v. McDevitt, 555 F.3d 324, 330 (4th Cir. 2009). Therefore, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Id.

But qualified immunity does not protect "the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). And while "[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion, . . . when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 396 (4th Cir. 2014) (quoting Field Day, LLC v. City of Suffolk, 463 F.3d 167, 191–92 (2nd Cir. 2006)). What's more, qualified immunity is an affirmative defense, so the SBI defendants bear the burden of proof and persuasion to show that they did not violate a clearly established

18

constitutional right. See Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022) (citing Henry v. Purnell, 501 F.3d 374, 377–78 (4th Cir. 2007)).

The foregoing analysis of Plaintiff's constitutional claims confirms that, under the deferential motion to dismiss standard, Plaintiff's allegations satisfy the first step of the qualified immunity inquiry by "substantiat[ing] the violation of a federal . . . constitutional right." Ridpath, 447 F.3d at 306. And Plaintiff's response to Defendants' motion to dismiss supplies a bevy of in-circuit authority establishing that the rights in question are clearly established. See (Doc. No. 19 at 11-12) (citing Washington v. Wilmore, 407 F.3d 274, 283 (4th Cir. 2005) (fabrication of evidence); Brooks, 85 F.3d at 183–84 (arrest and prosecution without probable cause); Miller, 475 F.3d at 631–32 (false statements in service of probable cause); Gilliam, 932 F.3d at 240–41 (failure to investigate)). Because Plaintiff plausibly alleges that SBI Defendants violated his clearly established constitutional rights, SBI Defendants' motion to dismiss Plaintiff's negligence claims on public official and qualified immunity grounds must be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny SBI Defendants' motion to dismiss in its entirety.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants John D. White and Amanda B. Nosalek's motion to dismiss Plaintiff's complaint, (Doc. No. 16), is **DENIED**.

Max O. Cogburn Jr
United States District Judge

19